**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JEAN KNUTSON, PETER LOVELAND and ABEL MEZA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SOUTHWEST CREDIT SYSTEMS, LP, <br><br> Defendant. | ) Case No.: 17-cv-456 <br> ) <br> ) **CLASS ACTION COMPLAINT** <br> ) <br> ) <br> ) <br> ) **Jury Trial Demanded** <br> ) <br> ) <br> ) <br> ) <br> ) |

**INTRODUCTION**

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

**JURISDICTION AND VENUE**

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

**PARTIES**

3. Plaintiff Jean Knutson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Peter Loveland is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Abel Meza is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them a debt allegedly incurred for personal, family or household purposes.

7. Defendant Southwest Credit Systems, LLP ("Southwest") is a debt collection agency with its principal place of business located at 4120 International Parkway Ste 1100, Carrollton, TX 75007.

8. Southwest is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Southwest is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Southwest is a debt collector as defined in 15 U.S.C. § 1692a.

### FACTS

#### *Knutson Letter*

10. On or about September 28, 2016, Southwest mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "US Cellular." A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt that Southwest was attempting to collect was a personal cellular telephone account with US Cellular, used only for personal, family or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by Southwest to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is the first written communication that Southwest sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

15. Exhibit A contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

2

16.     Exhibit A also contains the following settlement offer:

Reserving the right to negotiate, our client has advised us that they are willing to resolve your account in full for 80% of the total balance due. However, the full discounted amount should be received in our office by an agreed upon date. If you are interested in taking advantage of this offer, call us within 45 days of receiving this letter. If you are unable to take advantage of this offer, please contact us to see what other terms can be worked out to resolve your account.

17.     The above offer requires the consumer to call Southwest within "45 days of receiving this letter" if she is interested in "taking advantage of this offer."

18.     Thus, in order to accept the settlement offer, Exhibit A requires Plaintiff to call Southwest and commit to a payment due date no later than November 12, 2016.

19.     Assuming Exhibit A was actually mailed on September 28, 2016, the 30-day validation period identified in Exhibit A would end shortly before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a). The validation period begins when the consumer receives the validation notice, not when the debt collector mails it. *Id.*

### *Loveland Letter*

20.     On or about October 26, 2016, Southwest mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "US Cellular." A copy of this letter is attached to this complaint as Exhibit B.

21.     Upon information and belief, the alleged debt that Southwest was attempting to collect was a personal cellular telephone account with US Cellular, used only for personal, family or household purposes.

22.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23.     Upon information and belief, Exhibit B is a form debt collection letter used by Southwest to attempt to collect alleged debts.

3

24. Upon information and belief, Exhibit B is the first written communication that Southwest sent to Plaintiff regarding the alleged debt to which Exhibit B refers.

25. Exhibit B contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

26. Exhibit B also contains the following settlement offer:

> Reserving the right to negotiate, our client has advised us that they are willing to resolve your account in full for 80% of the total balance due. However, the full discounted amount should be received in our office by an agreed upon date. If you are interested in taking advantage of this offer, call us within 45 days of receiving this letter. If you are unable to take advantage of this offer, please contact us to see what other terms can be worked out to resolve your account.

27. The above offer requires the consumer to call Southwest within "45 days of receiving this letter" if he is interested in "taking advantage of this offer." Thus, in order to accept the settlement offer, Exhibit B requires Plaintiff to call Southwest and commit to a payment due date no later than December 10, 2016.

28. Assuming Exhibit B was actually mailed on October 26, 2016, the 30-day validation period identified in Exhibit B would end shortly before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a). The validation period begins when the consumer receives the validation notice, not when the debt collector mails it. *Id.*

29. Exhibits A and B are confusing to the unsophisticated consumer because they demand a payment shortly after the verification period, but do not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

4

30. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

31. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. A consumer may not recognize the original creditor – debts are freely assignable and corporations, especially banks, often change names. Furthermore, consumers receive Exhibit A and Exhibit B precisely because Southwest has started collecting the consumer's debt. 15 U.S.C. 1692g(a).

32. Moreover, once a consumer sends a dispute in writing, the debt collector is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

33. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

34. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A and Exhibit B. It is likely that the

5

settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

35. Thus, the effect of including, in the initial written debt communication, a settlement offer with a deadline within or shortly after the validation period, is to discourage or prevent consumers from exercising their validation rights.

36. Defendant did not include adequate explanatory language in Exhibit A and Exhibit B, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

37. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

### *Meza Letter*

38. On or about April 14, 2016, SCS mailed a debt collection letter to Plaintiff Meza regarding an alleged debt, allegedly owed to SCS and originally owed to "AT&T." A copy of this letter is attached to this complaint as Exhibit C.

39. The alleged debt identified in Exhibit C is an alleged internet services account, owed to AT&T, and used only for personal, family or household purposes.

40. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

41. Upon information and belief, Exhibit C is a form debt collection letter used by SCS to attempt to collect alleged debts.

42. Exhibit C states the following:

6

| Principal |
|:---:|
| $377.03 |
| **Interest** |
| $0.00 |
| **Total Amount Due** |
| $377.03 |

43. Although the amount of "Interest" in <u>Exhibit C</u> is $0.00, the unsophisticated consumer interprets such references in collection letters letter as implying that there could be some unknown interest charges added to the debt in future letters. *See, eg. Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

44. Plaintiff has never agreed to pay any amount of interest, or any rate of interest, on any alleged debt owed to the creditor listed on <u>Exhibit C</u>. The alleged debt was for internet service.

45. Upon information and belief, the reference to "Interest" is a threat to add prejudgment interest to Plaintiff's and Class Members' alleged debts, despite the fact that no legal action has been initiated against the consumer.

46. A debt collector cannot collect prejudgment interest when that interest has not been awarded by a court or agreed to by contract. *Paige v. Waukesha Health Sys.*, No. 12-cv-601-CNC; 2013 U.S. Dist. LEXIS 96962, *18-20 ("Wisconsin cases suggest, as the Paiges argue, that absent a contractual agreement prejudgment interest cannot be automatically added by a creditor but instead must await a court judgment;"), *citing Estreen v. Bluhm*, 79 Wis. 2d 142, 156, 255 N.W.2d 473, 482 (1977); *Erickson by Wightman*, 183 Wis. 2d at 123, n.8, 515 N.W.2d at 301,

7

n.8; *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 776-77, 501 N.W.2d 788, 802-03 (1993); *contra Trease v. Tri-State Adjustments, Inc.*, 934 F. Supp. 2d 1016 (E.D. Wis. 2013).

47. Wisconsin Courts have made clear that there is no entitlement to prejudgment interest without a judgment awarding it. *Erickson by Wightman*, 515 N.W. at 300-01 n.8 (*citing Estreen*, 255 N.W.2d at 481).

48. A plaintiff in a civil collection action (i.e. the creditor) has the burden to *prove* that it is entitled to prejudgment interest, as is true for any other relief that any plaintiff requests in a civil action. *Marquez v. Mercedes-Benz United States, LLC*, 341 Wis. 2d 119, 139, 815 N.W.2d 314, 324 (2012).

49. Indeed, Wisconsin Courts have declined to award prejudgment interest when a plaintiff failed to prove that it was entitled to the amount of damages that it sought in the lawsuit. *See Congress Bar & Restaurant, Inc. v. Transamerica Ins. Co.*, 42 Wis. 2d 56, 71, 165 N.W.2d 409, 417 (1969); *Dahl v. Housing Authority of Madison*, 54 Wis. 2d 22, 32, 194 N.W.2d 618, 623 (1972).

50. Until a creditor has *proven in court* that it is entitled to prejudgment interest in court by obtaining a judgment awarding prejudgment interest, such interest is a future, contingent amount that is not owed by the consumer and is not part of the "amount of the debt."

51. The Seventh Circuit has held that similar conduct, namely the collection of future, contingent amounts that depend upon the entry of judgment specifically allowing those amounts, but before the judgment is actually entered, violates the FDCPA because the contingent amounts are not part of the debt. *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003).

8

52. SCS's tactic of threatening to add unawarded prejudgment interest to the alleged debt is a material violation of the FDCPA. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

53. Plaintiffs were confused by Exhibits A, B and C, respectively.

54. Plaintiffs had to spend time and money investigating Exhibits A, B and C, and the consequences of any potential responses to Exhibits A, B and C .

55. Plaintiffs had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiffs on the consequences of Exhibits A, B and C.

56. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

9

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

57. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f (1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## COUNT I – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Count I is brought on behalf of Plaintiffs Knutson and Loveland.

10

64. The statement on <u>Exhibit A</u> and <u>Exhibit B</u>, "If you are interested in taking advantage of this offer, call us within 45 days of receiving this letter" conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

65. <u>Exhibit A</u> and <u>Exhibit B</u> are confusing, deceptive, and/or misleading to the unsophisticated consumer.

66. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

67. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## <u>COUNT II – FDCPA</u>

69. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Count II is brought on behalf of Plaintiff Meza.

71. The reference in <u>Exhibit C</u> to "Interest" is false, misleading and confusing.

72. SCS is not entitled to collect any prejudgment interest, as the alleged obligation has not been reduced to judgment.

11

73. Plaintiff did not enter into any agreement with the creditor to pay interest or to a rate of interest.

74. SCS violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

75. Plaintiff brings this action on behalf of two Classes.

76. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A or Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between March 29, 2016, and March 29, 2017, inclusive, (e) that was not returned by the postal service. Class One shall be known as the "Settlement" Class and Plaintiffs Knutson and Loveland will represent the class.

77. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between March 29, 2016, and March 29, 2017, inclusive, (e) that was not returned by the postal service. Class Two shall be known as the "Interest" class, and Plaintiff Meza will represent the class.

78. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

79. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. § 1692e, 1692e(10), 1692f, 1692f(1) and 1692g.

12

80. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

81. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

82. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

83. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 29, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin

Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

13